UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KAREN ONCAY; and RAYMOND ONCAY,

                              Plaintiffs,

v.                                                          8:19-CV-1428
                                                            (GTS/CFH)
INFLASAFE USA, INC., d/b/a US Airbag; and
GREAT AIR, INC., d/b/a N-FLATABLES,

                              Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

WEINSTEIN, ZIMMERMAN & OHLIGER          JASON ROBERT OHLIGER, ESQ.
  Counsel for Plaintiffs
410 Broad Street
Milford, PA 18337

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this personal injury action filed by Karen Oncay and

Raymond Oncay ("Plaintiffs") against Inflasafe USA, Inc., and Great Air, Inc. ("Defendants"), is

Plaintiffs' motion for default judgment against Defendant Inflasafe pursuant to Fed. R. Civ. P.

55(b).  (Dkt. No. 48.)  For the reasons set forth below, Plaintiffs' motion is granted.

I.       RELEVANT BACKGROUND

         A.       Plaintiffs' Complaint

         Generally, in their Complaint, Plaintiffs allege that Defendant Inflasafe (along with

Defendant Great Air and multiple defendants who have been dismissed from this action)

designed, manufactured, assembled, distributed, promoted and sold recreational airbags, one of

which caused Plaintiff Karen Oncay's injuries.  (Dkt. No. 3 [Pls.' Compl.].)  More specifically,

Plaintiffs allege that on September 24, 2016, or 2017,[1] at Whiteface Mountain, Plaintiff Karen Oncay attempted a vertical freefall of approximately 30 feet into Defendant Inflasafe's airbag, feet first, during which she suffered serious and permanent injuries consisting of a tibia and fibula fracture of her right leg requiring surgery and other medical treatment.  (*Id.* at ¶¶ 53-55.)

Based on these factual allegations, Plaintiffs assert the following four claims against Defendant Inflasafe: (1) Defendant Inflasafe is strictly liable to Plaintiff Karen Oncay for her injuries suffered as a result of the airbag because that airbag was not reasonably safe and/or defective; (2) Defendant Inflasafe was negligent in failing to exercise reasonable care in the design, testing, manufacture, assembly, distribution, promotion, sale, and delivery of the airbag, and by failing to include proper warnings, notice, or instructions to users and consumers about the dangers, risks, and hazards attendant in use of the airbag; (3) Defendant Inflasafe expressly or impliedly warranted that the airbag and its component parts were of merchantable quality, were fit for the purpose and use for which they were intended, and could be used for those purposes without substantial risk of injury; and (4) Defendant Inflasafe's actions have caused Plaintiff Raymond Oncay to suffer a loss of the comfort, companionship, services, and consortium of his wife, Plaintiff Karen Oncay.  (*Id.*)

### B.      Relevant Procedural History

On September 23, 2019, Plaintiffs filed the Complaint in this case in the Southern District of New York.  (Dkt. No. 3.)  On November 15, 2019, the case was transferred to this Court pursuant to a motion by Defendant Great Air.  (Dkt. No. 27.)  On May 18, 2019, Plaintiffs filed a request for entry of default against Defendant Inflasafe; and, on May 19, 2019, the Clerk of Court entered default against Defendant Inflasafe on all claims pursuant to Fed. R. Civ. P.

---

[1]      Because the Complaint is inconsistent about the year, it is not clear to the Court whether 2016 or 2017 is the correct year in which the injuries occurred.  (*Id.* at ¶¶ 53-54.)

55(a).  (Dkt. Nos. 42, 44.)  On June 8, 2020, Plaintiffs filed the current motion for default judgment against Defendant Inflasafe.  (Dkt. No. 48.)

> **C.** **Parties' Briefing on Plaintiffs' Motion**

Generally, in their motion for default judgment pursuant to Fed. R. Civ. P. 55(b), Plaintiffs argue that they are entitled to default judgment for the following reasons: (a) Defendant Inflasafe has been properly served with the summons and Complaint but has neither answered nor moved relative to the Complaint; (b) Defendant Inflasafe is not an infant, incompetent, or a member of a military service; and (c) the Clerk of Court granted a certificate of default on May 19, 2020.  (Dkt. No. 48, at 1-2, 68-69.)  Plaintiffs request that, upon entry of default judgment, an inquest be conducted to determine the amount of damages resulting from Defendant Inflasafe's actions.  (*Id.*)

As of the date of this Decision and Order, Defendant Inflasafe has neither filed an Answer to the Complaint nor filed a response to Plaintiffs' motion.  (*See generally* Docket Sheet.)  The time in which to file a response to Plaintiffs' motion has now passed.  (Text Notice filed June 9, 2020 [indicating that any response to Plaintiffs' motion was due by June 29, 2020].)

## II.   GOVERNING LEGAL STANDARDS

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant."  *Robertson v. Doe*, 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008).  "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'"  *Robertson*, 2008 WL 2519894, at *3 (quoting Fed. R. Civ. P. 55[a]).  "Second, pursuant to Rule 55(b)(2), the party seeking default judgment is required to present its application for entry of judgment to the court."  *Id.*  "Notice of the application must be sent to the defaulting party so that it has an

opportunity to show cause why the court should not enter a default judgment." *Id.* (citing Fed. R. Civ. P. 55[b][2]). "When an action presents more than one claim for relief . . . , the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties . . . if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

Pursuant to Second Circuit law, when determining whether to grant a default judgment, the Court must consider three factors: (1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *Pecarksy v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "An unexcused or unexplained failure to provide an answer to the Complaint will itself demonstrate willfulness," as does failing to respond to both a complaint and a subsequent motion for default judgment. *United States v. Silverman*, 15-CV-0022, 2017 WL 745732, at *3 (E.D.N.Y. Feb. 3, 2017) (citing *S.E.C. v. McNulty*, 137 F.3d 732, 738-39 [2d Cir. 1998]; *Indymac Bank v. Nat'l Settlement Agency, Inc.*, 07-CV-6865, 2007 WL 4468652, at *1 [S.D.N.Y. Dec. 20, 2007]).

When a court considers a motion for the entry of a default judgment, it must "accept[ ] as true all of the factual allegations of the complaint . . . ." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted). "However, the court cannot construe the damages alleged in the complaint as true." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds v. Catone Constr. Co., Inc.*, 08-CV-1048, 2009 WL 4730700, at *2 (N.D.N.Y. Dec. 4, 2009) (Scullin, J.) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 [2d Cir. 1999] [citations omitted]). "Rather, the court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Eng'rs Joint Welfare,*

*Pension, Supplemental Unemployment Benefit and Training Funds*, 2009 WL 4730700, at *2 (quoting *Alcantara*, 183 F.3d at 155 [citation omitted]).  This inquiry "involves two tasks: [1] determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's evidence supporting the damages to be determined under this rule." *Alcantara*, 183 F.3d at 155. Finally, in calculating damages, the court "need not agree that the alleged facts constitute a valid cause of action . . . ." *Au Bon Pain*, 653 F.2d at 65 (citation omitted).

Under N.D.N.Y. L.R. 55.2(a), when requesting an entry of default judgment from the Clerk of the Court, the moving party must submit (a) the Clerk's certificate of entry of default, (b) a statement showing the principal amount due (not to exceed the amount demanded in the Complaint and giving credit for any payments with the dates of payments), (c) a computation of the interest to the day of judgment, (d) a per diem rate of interest, (e) the costs and taxable disbursements claimed, and (f) an affidavit of the moving party or the party's attorney. N.D.N.Y. L.R. 55.2(a).  The appended affidavit must show that (a) the party against whom judgment is sought is not an infant or incompetent person, (b) the party against whom judgment is sought is not in military service, (c) the party against whom judgment is sought has defaulted in appearance in the action, (d) service was properly effected under Fed. R. Civ. P. 4, (e) the amount shown in the statement is justly due and owing and no part has been paid except as set forth in the party's other statement, and (f) disbursements sought to be taxed have been made in the action or will necessarily be made or incurred. *Id.*

Under N.D.N.Y. L.R. 55.2(b), when moving for an entry of default judgment from the Court, the moving party must submit (a) the Clerk's certificate of entry of default, (b) a proposed form of default judgment, (c) a copy of the pleading to which no response has been made, and

(d) an affidavit of the moving party or its attorney setting forth the facts required by N.D.N.Y.

L.R. 55.2(a).  N.D.N.Y. L.R. 55.2(b).

## III.   ANALYSIS

After careful consideration, the Court grants Plaintiffs' motion for default judgment against Defendant Inflasafe as to liability for the reasons stated in their motion.  *See, supra*, Part I.C. of this Decision and Order.  To those reasons, the Court adds the following analysis.

### A.  Willfulness of Defendant Inflasafe's Default

As an initial matter, the Court finds that Defendant Inflasafe's default was willful based on its failure to either answer the Complaint or file any response to Plaintiffs' motion for default judgment.  *Silverman*, 2017 WL 745732, at *3 (citing *McNulty*, 137 F.3d at 738-39; *Indymac Bank*, 2007 WL 4468652, at *1).  The Court notes that, according to the affidavit of Plaintiffs' counsel and the affidavit of service of the Complaint, Plaintiffs served a copy of their Summons and Complaint on Defendant Inflasafe by leaving a copy of both at (and subsequently mailing a copy to) the place of business of Arsen Ambartsumyan, the president of Defendant Inflasafe.[2] Plaintiffs served the in-person copies on a John Doe present at the relevant address, and, despite indications that Mr. Ambartsumyan was employed as a sales manager at the business located at that address, the John Doe refused to accept the Summons and Complaint.  (Dkt. No. 40, at 4.) The mailed Summons and Complaint were sent to the same address.  (*Id.*)

---

[2]      The Wyoming Secretary of State's office's records indicate that Defendant Inflasafe's incorporation status is currently inactive and delinquent due to failure to file its annual report, and has been since October 9, 2019.  *See* Wyoming Sec. of State, Record for Inflasafe USA, https://wyobiz.wyo.gov/Business/FilingDetails.aspx?eFNum=2131850911561502491452420701 10045247189045021032 (last visited Mar. 3, 2021).  The Court may take judicial notice of this information.  *See Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 490 n.2 (N.D.N.Y. 2020) (Kahn, J.) ("The Court may take judicial notice of documents . . . retrieved from official government websites or other government records from such websites."); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (noting that documents retrieved from official government websites, including state and county websites, were "clearly proper" subjects of judicial notice).

Subsequently, Plaintiffs served a copy of their motion on Defendant Inflasafe at the same address, which does not appear to have been returned as undeliverable (despite the fact that a Text Notice from the Court was returned as undeliverable at approximately the same time). (Dkt. No. 52.)  In any event, Plaintiffs' counsel has sworn in an affidavit that multiple sources of information indicate that Mr. Ambartsumyan is an employee of the business located at the relevant address, and has provided a report that lists Mr. Ambartsumyan as the Sales Manager for that business.

Based on the information provided, the Court finds that Defendant Inflasafe (through Mr. Ambartsumyan) was provided with notice of both the action against his company and of the pending motion for default judgment, but has failed to answer either and has not appeared to provide an explanation for the default.  The Court therefore finds that the available evidence is sufficient to indicate that Defendant Inflasafe's default is willful.

### B.  Meritorious Defense to Plaintiffs' Claims

The Court finds that there is no indication at this time that Defendant Inflasafe would have a meritorious defense to the asserted claims for which, as will be discussed in greater detail below, the Court finds Plaintiffs have sufficiently alleged facts to establish liability on a motion for default judgment.

### C.  Liability on Plaintiffs' Claims

As discussed above in Part II of this Decision and Order, the Court must accept the factual allegations in the Complaint as true when assessing whether a plaintiff has established liability for a motion for default judgment.  However, that does not mean that a finding of liability is automatic.  Rather, "prior to entering default judgment, a district court is 'required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law.'"  *City*

*of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Finkel v. Romanowicz,* 577 F.3d 79, 84 [2d Cir. 2009]).

As discussed above in Part I of this Decision and Order, Plaintiffs assert the following four claims against Defendant Inflasafe: (1) defective design; (2) negligence and failure to warn; (3) breach of express or implied warranty of merchantability; and (4) loss of support.  (Dkt. No. 3 [Pls.' Compl.].)  Although success on each of these claims may not be necessary for Plaintiffs to obtain all of the relief they seek against Defendant Inflasafe, the Court will analyze each of those claims for the purpose of thoroughness.

### 1.  Defective Design

To state a claim for defective design under New York law, the plaintiff must allege facts plausibly suggesting the following: "(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury."  *Astoria Energy II LLC v. HH Valves Ltd.*, 17-CV-5724, 2019 WL 4120759, at *5 (E.D.N.Y. Aug. 2, 2019); *accord, Parillo v. Stryker Corp.*, 15-CV-0155, 2015 WL 12748006, at *5 (N.D.N.Y. Sept. 29, 2015) (Sannes, J.) (citing *Maxwell v. Howmedica Osteonics Corp.*, 713 F. Supp. 2d 84, 90 [N.D.N.Y. 2010] [Suddaby, J.]).

In the Complaint, Plaintiffs allege that the relevant airbag was not reasonably safe and/or was defective for the following relevant reasons: (a) it lacked any means of reliably quantifying or measuring the air pressure within the chambers; (b) it lacked any reliable means of stabilizing air pressure in the chambers as air was lost with each jumper; (c) it lacked the means to prevent operators from using the bag in a dangerous or unintended manner (such as using only one chamber); (d) it was designed, distributed and sold without any scientific or engineering basis for

8

its overall size and thickness, or for the size, thickness, number, shape or configuration of its chambers; (e) it was adapted from competitors' designs without sufficient independent research or a sufficient scientific or engineering understanding of those competitors' designs; (f) it was designed, distributed and sold without review, input, analysis, or testing by a qualified scientist, engineer, biochemist, or gymnasium/stunt expert; (g) it was marketed and sold for purposes (i.e., ski and snowboard jumps and vertical freefalls) that were not sufficiently tested by Defendant Inflasafe to ensure safety; (h) it was marketed and sold for use in vertical freefall attractions without developing specific recommendations for use in such a context; (i) it lacked written or visual instructions for safe use; (j) it was designed and/or manufactured without proper research, evaluation, formulation, and testing of the materials and prototypes to ensure safety; and (k) its appearance as a "giant pillow" deceptively lulled the user into a false sense of security by making the airbag appear safe and disguising its inherent danger.  (Dkt. No. 3, at ¶ 58 [Pls.' Compl.].)   Plaintiffs additionally allege that (a) the airbag was in defective condition, (b) the design, manufacture, assembly, distribution, promotion, and sale of the airbag in a dangerous and defective condition caused Plaintiff's injuries, (c) a feasible alternative design for the airbag exists and did exist at the time when the relevant airbag was manufactured and sold, (d) the alternative design would have rendered the airbag reasonably safe, and (e) the design of the relevant airbag is inherently dangerous and cannot be made safe for the intended purpose of recreational vertical freefalls by untrained participants.  (*Id.* at ¶¶ 59-64.)

Although some of these allegations border on legal conclusions, the Court finds that, taken as a whole, they allege sufficient facts to establish liability on Plaintiffs' defective design claim on a motion for default judgment.  Specifically, Plaintiffs have alleged facts plausibly suggesting that the airbag in question posed a substantial risk of harm based on its design faults listed above

(which includes failure to include a means to assess and/or stabilize the level of inflation in the airbag), that a feasible and safer alternative design existed at the relevant time, and that the defective design was a substantial factor in Plaintiff Karen Oncay's injuries when she attempted a vertical freefall into the airbag.

### 2. Negligence and Failure-to-Warn

To state a claim for a failure-to-warn claim under New York law, the plaintiff must allege facts plausibly suggesting that (a) the manufacturer had a duty to warn against "latent dangers resulting from foreseeable uses of the product of which it knew or should have known and the danger of unintended uses of a product provided these uses are reasonably foreseeable," (b) the plaintiff used the product in a reasonably foreseeable manner, and (3) the failure to warn was the cause of the plaintiff's injury. *Hunter v. Shanghai Huangzhou Elec. Appliance Mfg.. Co., Ltd.*, 17-CV-0052, 2020 WL 7186792, at *11 (N.D.N.Y. Dec. 7, 2020) (Sannes, J.) (citing *Monell v. Scooter Store, Ltd.*, 895 F. Supp. 2d 398, 413 [N.D.N.Y. 2012] [D'Agostino, J.]). Similarly, to state a negligence claim under New York law, the plaintiff must allege facts plausibly suggesting that (a) the manufacturer owed a duty to exercise reasonable care, (b) the manufacturer breached that duty in a manner that rendered the product defective or reasonably certain to be dangerous, (c) the defect caused by the breach was the proximate cause of the plaintiff's injury, and (d) the plaintiff sustained an injury as a result of the breach. *Hunter*, 2020 WL 7186792, at *11 (quoting *Colon*, 895 F. Supp. 2d at 82). "[A] plaintiff may proceed on a negligence claim in the absence of evidence identifying a specific product defect, provided that he or she can 'prove that the product did not perform as intended and exclude all other causes for the product's failure that are not attributable to defendants.'" *Hunter*, 2020 WL 7186792, at *11 (quoting *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 125 [2d Cir. 2006]).

In the Complaint, Plaintiffs allege that Defendant Inflasafe was negligent (a) in failing to

exercise reasonable care in the design, testing, manufacture, assembly, distribution, sale, and

delivery of the relevant airbag, and (b) in failing to include proper warnings, notice, or

instructions to users and consumers about the dangers, risks, and hazards of using the airbag.

(Dkt. No. 3, at ¶ 67-68 [Pls.' Compl.].)  More specifically, Plaintiffs allege that Defendant

Inflasafe was negligent in the following ways: (a) failing to provide adequate instructions to

operators about proper inflation and deflation; (b) failing to incorporate devices and/or methods

for quantifying or measuring the air pressure in the chambers of the airbag; (c) failing to research

and develop any scientific or engineering basis for the overall size and thickness or the airbag, or

for the size, thickness, number, shape, or configuration of the chambers within the airbag; (d)

adapting the design from competitors' designs without sufficient independent research or

understanding of those designs; (e) failing to employ a qualified expert to review, analyze, or test

the design and material of the airbag; (f) failing to conduct sufficient testing to ensure that the

airbag was safe for its intended purpose; (g) failing to develop specific recommendations based

upon scientific or engineering analysis about how the airbag should be used in practice; (h)

failing to provide written or visual instructions for safe use of the airbag for its intended purpose;

(i) designing and developing the airbag without sufficient research and testing; (j) designing and

developing the airbag in a manner that was unsafe to use; (k) designing and developing the

airbag without proper research, evaluation, and testing of prototypes; (l) failing to provide proper

and effective written and/or visual warnings to users regarding safe uses, unsafe uses, and the

risk of injury; (m) failing to develop, implement or provide accompanying training programs,

instructions, and/or written materials to properly instruct and train operators of the airbag; (n)

failing to advise the operator and warn the user of the risk of injury when using the airbag; (o)

failing to properly hire and retain employees and agents that were sufficiently qualified, educated, and experienced to design, research, develop and test the airbag; (p) failing to properly train, educate, instruct, and/or supervise employees and agents to ensure that they were sufficiently qualified, educated and experienced; (q) failure to engage, employ, or retain a third party contractor capable of competently manufacturing and assembling the airbag to Defendant Inflasafe's exact design specifications; and (r) designing and developing the airbag in a way that the appearance would lull the user into a false sense of security about the danger. (*Id.* at ¶ 68.) Plaintiffs additionally allege that Defendant's negligent actions or omissions were the direct cause of Plaintiff Karen Oncay's specified injuries. (*Id.* at ¶ 69.)

These allegations are sufficient to establish liability on Plaintiffs' claim of negligence for the purposes of this motion for default judgment. Specifically, Plaintiffs have alleged facts sufficient to plausibly suggest that Defendant Inflasafe had a duty as a manufacturer to ensure that its airbag was safe for vertical freefall jumps, it breached that duty by failing to conduct a range of safety testing or to take numerous other steps to ensure that the airbag was safe before manufacturing, marketing and selling it for use, and Plaintiff Karen Oncay suffered injuries as a result of Defendant Inflasafe's actions.

Plaintiffs' allegations are also sufficient to establish liability for the failure-to-warn claim for the purposes of this motion for default judgment. Specifically, Plaintiffs have alleged that vertical freefalls of the type performed by Plaintiff Karen Oncay were a foreseeable use for which the airbag was specifically designed and marketed, that Defendant Inflasafe essentially provided no warnings or instructions for proper use of the airbag for that purpose, and that she was injured by this failure to warn of the dangers or provide instructions for safe use. (Dkt. No. 48, at ¶¶ 52, 68 [Pls.' Compl.].) Through the various allegations about Defendant Inflasafe's

failure to conduct necessary safety and other testing, Plaintiffs have also sufficiently alleged that Defendant Inflasafe should have known about the risks of injury had it exercised reasonable care when designing and manufacturing the airbag.

### 3. Implied Warranty of Merchantability

To state a claim for breach of implied warranty of merchantability[3] under New York law, the plaintiff must allege facts plausibly suggesting that (a) the product in question was defectively designed or manufactured, (b) the defect existed when the manufacturer delivered the product to the purchaser, and (c) the defect was the proximate cause of the plaintiff's injury. *O'Neil v. Argon Med. Devices, Inc.*, 17-CV-0640, 2020 WL 1149904, at *8 (N.D.N.Y. Feb. 13, 2020)

---

[3]     Plaintiffs assert a claim for breach of express warranty in the Complaint, but fail to allege any facts about the existence of any such express warranty related to the airbag other than the statement "that the airbag would provide 'Safe Landings for Superheroes' and/or 'Soft Landings for Superheroes.'"  (Dkt. No. 48, at 20-21 [Pls.' Compl.].)  However, these statements are more akin to advertising puffery than an express warranty of safety.  *See Colangelo v. Champion Petfoods USA, Inc.*, 18-CV-1228, 2020 WL 777462, at *11 (N.D.N.Y. Feb. 10, 2020) (Kahn, J.) (noting that, although a claim for breach of an express warranty can be based on an affirmation of fact or a promise by the seller that would have the tendency of inducing a buyer to purchase that item, statements that constitute puffery are not actionable); *Avola v. Louisiana-Pacific Corp.*, 991 F. Supp. 2d 381, 392-94 (E.D.N.Y. 2013) (defining puffery as statements that [a] are vague or general descriptions of a product rather than a description of a specific characteristic of the product, [b] subjective and not measured on an objective basis, such as through studies or comparisons with competitors' products, and [c] are such that no investor or purchaser would take it fully seriously or be influenced by such statements when determining whether to purchase the product); *see also Krulewich v. Covidien, LP*, 19-CV-2857, 2020 WL 5995103, at *6 (S.D.N.Y. Oct. 9, 2020) (finding that statements that the subject surgical mesh was "safe and effective for the use of hernia repair" and were the "most complete" or "most studied, innovative, and reliable hernia products available today" were not definite enough to state a claim for breach of express warranty).

Additionally, to the extent that Plaintiffs intended to assert a concurrent claim of breach of implied warranty of fitness for a particular purpose, such claim would have to be dismissed as legally insufficient.  (Dkt. No. 48, at 20-21 [Pls.' Compl.].)  Specifically, if "the particular purpose for which goods are to be used coincides with their general function use, the implied warranty of fitness for a particular purpose merges with the implied warranty of merchantability."  *Tears v. Boston Scientific Corp.*, 344 F. Supp. 3d 500, 513 (S.D.N.Y. 2018).  Plaintiffs have not alleged that her use of the airbag here for vertical freefalls differs from the general function use of such airbag.  As a result, the Court considers only a claim for breach of implied warranty of merchantability.

(Dancks, M.J.), Report-Recommendation adopted by 2020 WL 1140511 (N.D.N.Y. Mar. 9, 2020) (Hurd, J.); *Tears*, 344 F. Supp. 3d at 513.  The Court finds that Plaintiffs have established liability on this claim for many of the same reasons as discussed related to her design defect claim.  Specifically, Plaintiffs alleged that the airbag was not reasonably safe or fit for its ordinary purpose as a result of the alleged list of defects, including failure to include any means of assessing or regulating the air pressure inside the airbag with use.

### 4.  Loss of Support

Under New York law, the spouse of an injured plaintiff may recover for loss of support, services, love, companionship, affection, society, sexual relations, solace and other elements that result from the injury.  *Gonzalez v. United States*, 17-CV-3645, 2020 WL 1548067, at *8-9 (S.D.N.Y. Mar. 31, 2020) (citing *Rangolan v. Cty. of Nassau*, 370 F.3d 239, 247 [2d Cir. 2004]).  "An award for loss of consortium 'is designed to compensate for the injury to the marital relationship' and to 'the interest of the injured party's spouse in the continuance of a healthy and happy marital life.'"  *Gonzalez*, 2020 WL 1548067, at *9 (quoting *Rangolan*, 370 F.3d at 248).  Plaintiffs allege in the Complaint that Plaintiff Raymond Oncay has "suffered a loss of comfort, companionship, services, and consortium" as a result of the injuries Plaintiff Karen Oncay suffered due to Defendant Inflasafe's conduct.  (Dkt. No. 48, at 60 [Pls.' Compl.].)  Because the Court has already determined that Plaintiffs have sufficiently established liability related to the above claims based on Plaintiff Karen Oncay's injuries, the Court also finds that Plaintiffs' allegations related to the loss-of-support claim sufficiently establish liability on that claim.  Of note, although Plaintiffs do not include allegations about the specific ways or degree in which Plaintiff Raymond Oncay's relationship with his wife was altered as a result of the injuries, the allegations included are sufficient for the purposes of establishing liability here; the specific

14

nature and extent of his injury can be better assessed when determining the amount of damages to which he would be entitled.

### A.  Prejudice to Plaintiffs

Lastly, the Court finds that Plaintiffs would suffer an appreciable degree of prejudice if the motion for default judgment were not granted.  As discussed above, Defendant Inflasafe's incorporation status has been inactive and delinquent since October 2019.  With an uncertainty about Defendant Inflasafe's future operations or operational status, further delay until Defendant Inflasafe appears and answers the Complaint poses a real risk of jeopardizing Plaintiffs' ability to recover damages from Defendant Inflasafe.  *See New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) (finding that it was not clear error for the district court to find prejudice where the state showed that the delay put at risk the state's ability to obtain funds necessary to proceed with its plan for remediating the contaminated site); *First Technology Capital, Inc. v. Airborne, Inc.*, 378 F. Supp. 3d 212, 218 (W.D.N.Y. 2019) (finding that the defendant's apparent insolvency would cause plaintiff to be substantially prejudiced if the motion for default judgment were denied because "without the entry of a default, Plaintiff would be unable to recover for the claims adequately set forth in the Complaint"); *In re FKF 3, LLC*, 501 B.R. 491, 507 (S.D.N.Y. 2013) (finding that prejudice existed based on the fact that the plaintiff's financial situation made it unlikely that plaintiff could satisfy the default judgment itself, much less the interest that would continue to accrue the longer recovery was delayed).

### B.  Damages

The Court is unable to make any findings regarding the amount of damages in this Decision and Order given Plaintiffs' failure to establish (or even indicate) the amount of damages they are seeking.  The Court therefore grants Plaintiffs the opportunity to submit evidence related to

determining the amount of damages to which they are entitled as a result of the Court's finding

that Defendant Inflasafe is liable under the standards applicable to default judgment.  Upon

submission of this evidence (and any responsive submission from Defendant Inflasafe), the

Court will determine whether an in-person hearing will be required.

     **ACCORDINGLY**, it is

     **ORDERED** that Plaintiffs' motion for default judgment (Dkt. No. 48) is **<u>GRANTED</u>**;

and it is further

     **ORDERED** that default judgment shall be issued in favor of Plaintiffs against Defendant

Inflasafe as to liability; and it is further

     **ORDERED** that Plaintiffs shall file with the Court, and serve on Defendant Inflasafe,

evidence related to proving the amount of damages it incurred as a result of Defendant

Inflasafe's liability on the claims described above in Part I.A. of this Decision and Order within

**TWENTY-ONE (21) DAYS** from the date of this Decision and Order, to which Defendant

Inflasafe will be permitted **FOURTEEN (14) DAYS** to respond.

Dated: March 19, 2021
     Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge